1

2

3

4                                          **E-FILED on** ____6/17/05____

5

6

7

8                 IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   METABYTE, INC. and VIVEK MEHTA,          No. C-02-05509  RMW

13              Plaintiffs,                   ORDER GRANTING IN PART AND
                                              DEFERRING IN PART THE DECISION ON
14        v.                                  DEFENDANT'S MOTION TO EXCLUDE THE
                                              EXPERT WITNESS TESTIMONY OF SEAN
15   CANAL+ TECHNOLOGIES, S.A.,               BADDING

16              Defendant.                    **[Re Docket No. 196]**

17

18        Canal+ Technologies, S.A. ("Canal+") moves to preclude Metabyte, Inc. ("MNI") and Vivek

19   Mehta (collectively "plaintiffs") from offering the testimony of expert witness Sean Badding ("Badding").

20   The court has considered Badding's report and the moving and opposing papers.  For the reasons set forth

21   below, the court grants Canal+'s motion with respect to Badding's opinion on the fair market value of MNI

22   common shares and grants in part and defers its decision in part on the motion with respect to Badding's

23   opinion that MNI's financial statements demonstrate that the company met its budget and revenue goals for

24   certain specified dates.

25

26

27

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

# I. BACKGROUND

## A.      Badding's Valuation Opinion

A potential issue in this case is the measure of the fair market value ("FMV") of the third tranche of common stock held by the optionees at the time of their exercise of the Put Option for the third tranche. This issue will come into play if the jury finds that Canal+ breached the Put Option by not purchasing shares in the third tranche.  Badding calculates the FMV of MNI as of February 6, 2004 to be $87.47 million, "assuming that MNI management intended to operate the company."  Badding Report at 21.

The Put Option calls for valuators to use seven practices and assumptions when determining MNI's FMV:

> a.  The FMV shall be calculated for the total issued for Common Stock of the Company on a fully diluted basis;
> b.  Assuming a willing seller and a willing purchaser;
> c.  Taking into consideration the capital structure of the Company;
> d.  Without giving effect to any 'control premium' or similar consideration;
> e.  Giving particular weight to any recent issuances of equity securities by the Company to investors and the valuation of the Company implied thereby;
> f.  Taking into consideration multiples of [earnings before interest and taxes ("EBIT")], [earnings before interest, taxes, depreciation, and amortization ("EBITDA")], net income and sales revenue;
> g.  Taking into consideration the valuations of similar types of companies carrying similar types of businesses, but subject to the shareholding structure of the Company.

Put Option section 1.2(c)(iii).  Badding claims to have combined these factors with "the best practices of the technology industry for valuing private equities."  Badding Report at 12.

Badding notes that there are three general approaches to valuing privately-held companies: the market approach, the income approach, and the asset-based approach.  Badding chose the market approach because he believes that the income and asset-based approaches are inapplicable due to MNI's status as an emerging company without an income track record or tangible assets.  The market approach involves comparing an emerging company with "one or more 'guideline companies' to arrive at a relative valuation."  *Id*. at 13.  After considering nine potential guideline companies, Badding picked TiVo.

Badding then employs a practice he calls the "direct ratio" version of the market approach to determine MNI's value by comparing MNI's capitalization with TiVo's market capitalization.  *Id*. at 18. Badding uses three main points of comparison.  First, on January 10, 2000, TiVo had issued 37.75 million shares, which were selling at $71.50 per share, for a total market capitalization of $2.7 billion.  MNI had

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

1   issued 23.54 million shares at $1.33 per share for a total of $31.3 million.  Because 31.3 million is 1.16%

2   of 2.7 billion, Badding determined that, on January 10, 2000, MNI had 1.16% of TiVo's value.  Second,

3   Badding compares these variables on July 24, 2001.  On that date, Badding notes that MNI's value was

4   9.22% of TiVo's.  Because Badding believes that MNI compares favorably with TiVo, he opines that this

5   ratio held constant until February 6, 2004.  On that date, TiVo's market capitalization was $948.7 million.

6   Badding thus concluded that, on February 6, 2004, MNI was worth 9.22% of $948.7 million, or $87.47

7   million.[1]

8           **B.      Badding's Milestones Opinion**

9           Another issue in this case is whether MNI satisfied "Technical Milestones" and "Financial

10  Milestones"—conditions precedent to MNI's common shareholders' exercise of the first and second

11  tranche option shares.  The Put Option assigned MNI's Board of Directors the task of establishing the

12  Financial Milestones.  According to plaintiffs, Canal+ refused to negotiate them in good faith, but MNI

13  essentially met its Financial Milestones by meeting certain budget and revenue goals allegedly set by MNI's

14  Board.  Badding opines that "MNI's financial statements demonstrate that the company met these goals for

15  the period from July 24, 2001 to July 24, 2002 and as of July 24, 2003."  Badding Report at 5-12.

16                          **II. ANALYSIS**

17          **A.      Standard Under *Daubert***

18          Federal Rule of Evidence 702 provides that courts may admit expert testimony if it is both relevant

19  and reliable:

20          If scientific, technical, or other specialized knowledge will assist the trier of fact to
            understand the evidence or to determine a fact in issue, a witness qualified as an expert by
21          knowledge, skill, experience, training, or education, may testify thereto in the form of an
            opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
22          testimony is the product of reliable principles and methods, and (3) the witness has applied
            the principles and methods reliably to the facts of the case.

23

24

25

    _____

26          [1]      Badding also considered, but ultimately rejected, a method of determining the FMV of
    MNI by which TiVo's market capitalization is divided by the number of units deployed, the quotient is
27  discounted by 60%, the discounted quotient is then multiplied by the number of MNI units deployed, and
    that product is then discounted by 30%.  *Id*. at 20-21.

28
    ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
    EXPERT WITNESS TESTIMONY OF SEAN BADDING
    C-02-05509-RMW

1    *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993) (proponent of expert

2    testimony must prove admissibility by a preponderance of the evidence).  In addition, Federal Rule of

3    Evidence 403 mandates the exclusion of evidence that is substantially more prejudicial than probative.

4          To determine whether an expert's proposed testimony is reliable, a trial judge may consider (1)

5    whether it can be tested or whether it is purely subjective; (2) whether it has been subject to peer review

6    and publication; (3) the known or potential rate of error; (4) the existence and maintenance of controls; and

7    (5) whether it has been generally accepted in the scientific community.  *See Kumho Tire Co., Ltd. v.*

8    *Carmichael*, 526 U.S. 137, 149-50 (1999).   "[A]ny step that renders [an expert's] analysis unreliable  . . .

9    renders the expert's testimony inadmissible.  That is true whether the step completely changes a reliable

10   methodology or merely misapplies that methodology."  *In re Paoli R. R. Yard PCB Litigation*, 35 F.3d

11   717, 745 (3d Cir. 1994).

12          **B.      Badding's Valuation Testimony**

13          Canal+ argues that Badding's valuation testimony is unreliable because Badding (1) is not properly

14   qualified as an "expert" and (2) improperly applied the market-based approach.

15          Canal+ first asserts that Badding "is not qualified to render valuation testimony" because "[h]e

16   received his 'training' in business valuation on the job," has "no formal valuation training," and has never

17   been disclosed as an expert witness before.  Mot. Excl. at 3:21-4:13.  The court disagrees.  It is well-

18   established that Rule 702 "contemplates a broad conception of expert qualifications" and "an expert may be

19   qualified either by 'knowledge, skill, experience, training, or education.'"  *Thomas v. Newton Intern.*

20   *Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994) (quoting Fed. R. Evid. 702) (reversing district court's

21   exclusion of proposed expert's testimony on qualification grounds where expert's sole claim to specialized

22   knowledge was job-related); *Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1248

23   n.17 (D. Haw. 2003) (expert's "work experience is extensive enough to qualify him as an expert . . .

24   whether or not he holds an academic degree").  In his deposition, Badding explained that his on-the-job

25   training "[t]hough . . . not formal in the eyes of perhaps the academic world," was "equivalent to getting a

26   degree in the valuations and in the analysis part of it since that was my day-to-day job."  Badding Depo. at

27

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

4

1   26:20-23.  Thus, Badding 's lack of academic credentials, standing alone, does not doom his status as an

2   expert.

3           Canal+ then argues that Badding's "direct ratio" method is flawed.  The court agrees.

4           Badding's selection of TiVo as the only "guideline" company in itself renders his analysis unreliable.

5   The differences between TiVo and MNI are so significant that Badding's utilization of the ratio between the

6   market capitalizations of the two companies for calculating MNI's value renders Badding's analysis

7   unreliable.  The following table highlights a few of the significant differences that makes the use of TiVo as a

8   guideline company unreasonable.

| TiVo | MAI |
|---|---|
| Spent millions to market and advertise its brand name, which is well recognized. | Has no brand value and is unknown to subscribers of services. |
| Has direct relationship with subscriber including direct billing and ability to obtain revenue from certain service upgrades. | Has no knowledge of who the subscribers are and no ability to contact directly.  Receives no revenue from ultimate users of technology and no reasonable expectation of future revenue from users. |
| Controls user interface with subscriber and what is presented to that customer. | Has no control over user interface. |
| Business model involves marketing product and service directly to customer. | Original business model of MNI management targets future advertising revenue (or, in accordance with Canal+'s model, licensing to service providers). |

18          A further difficulty with Badding's analysis is that he assumes that MNI intends to follow the

19  advertising business model advocated by Manu Mehta when, in fact, the controlling members of the MNI

20  Board had expressed a preference for the licensing model advocated by Canal+.  Therefore, although

21  Manu Mehta's vision may well have been the more insightful and potentially more lucrative, as of the time of

22  the exercise of the third tranche, Mr. Mehta was no longer an officer and MNI's direction was away from

23  the advertising business model.  Badding ignores that reality.

24          Even if one assumes that TiVo is an appropriate guideline company, Badding's "direct ratio" method

25  does not follow an accepted "market approach."  As pointed out by Canal+'s rebuttal expert, Badding's

26  method deviates from the traditional market-based approach because it oversimplifies what should be a

27  multiple-step analysis.  Badding did not determine how well TiVo was performing in light of its financial

28

fundamentals.  This process entails dividing its stock value by its revenue, net income before and after taxes,

gross and net cash flow, dividends or dividend paying capacity, EBIT, and EBITDA.  A reliable market

approach first generates a robust comparison of the guideline company's market capitalization relative to its

performance.  *See* Thomas Report, Granneman Decl. Ex. C, at 4.  These comparisons yield "value

measures": a ratio of by how much the guideline company's market capitalization exceeds each individual

economic variable.  *Id*.  The market approach then turns to the target company.  The second step of the

market approach is to multiply the target company's financial fundamentals by the same "value measures,"

thereby deriving its worth in light of its economic performance.  *Id*.  Badding's technique of comparing MNI

and TiVo's stock value ignores vital economic indicia and "provides no information about when, or if,

sustainable future benefits will be realized."  *Id*.[2]

Of course, experts enjoy leeway to adjust recognized methods to account for the particularities of

unique situations.  However,  Badding's "direct ratio" method appears flawed.  For one, although Badding

asserts that the "direct ratio" method is based on the "best practices of the technology industry for valuing

private equity," (Badding Report at 12), he provides no support for that proposition.  Badding's expert

report does not claim to rely on any published sources.  Likewise, during his deposition, he was unable to

name a valuation textbook that supported his "direct ratio" method:

> Q.  Is there a publication that you know of that I could go to that would
> describe for me the method that you have used to develop a valuation ratio
> which you have called the direct ratio correlation in your report?
>
> A.  There's not one specific individual textbook that I can direct you to
> that will cover the direct ratio.  Is that what you're asking, the direct
> ratio correlation?
>
> Q.  Yes.  What I was wondering is with respect to the methodology
>  you've used in your report—and you describe this aspect of it as the
> direct ratio correlation—is there a an [sic] authoritative text in the
> business valuation world that I could go to that would describe for me the methodology that
> you have used, even if it doesn't call it the direct ratio
> correlation method?
>
> A.  I'm sure there would be a a [sic] textbook that shows that valuation

---

[2]      Other courts have endorsed Thomas' version of the market approach.  *See, e.g., Okerlund v. U.S.*, 53 Fed. Cl. 341, 347 n.7 (Fed. Cl. 2002) (market approach involves creating "market multiples," which "are multiples of some type of capital as priced in the public market or as priced in a private transaction relative to some underlying company fundamental, such as book value, earnings or cash flow").

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

1
2

> process made to determining parts of the fair—or parts of the market-
> based approach that includes comparables with financials to a guideline
> company.

3   Badding Depo. at 89:20-90:16.  Notably, Badding's testimony that he has previously seen a market-based

4   approach based on comparing "financials to a guideline company" seems more consistent with the

5   recognized multiple-step approach, which looks to underlying "financials," not just stock value.  In their

6   opposition, plaintiffs cite two texts that they claim show that the market-based approach is superior to the

7   asset-based or income approaches.  However, these texts do not support Badding's specific "direct ratio"

8   application of the market-based approach.  Moreover, plaintiffs make no showing that Badding actually

9   consulted these sources.  *Cf. Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)

10  (excluding expert's opinion despite fact that counsel located three articles supporting it because expert

11  "simply did not rely on those items in formulating his opinion").  Plaintiffs fail to establish that the "direct

12  ratio" method is grounded in recognized valuation practices.

13      Badding's method also overlooks the requirements of the Put Option.  The Put Option sets forth

14  seven factors for a valuator to consider when determining MNI's FMV.  Badding's method focuses on one

15  such criteria: "the valuations of similar types of companies carrying similar types of businesses."  Put Option

16  section 1.2(c)(iii).  Badding does not consider MNI's most recent

17  "issuance( ) of equity securities by the Company to investors and the valuation of the Company implied

18  thereby"—a criterion which the Put Option mandates valuators give "particular weight."  *Id*.  He does not

19  discuss that on November 6, 2001 MNI issued a Common Stock Warrant for $0.25 a share.  Similarly, he

20  does not consider multiples of EBIT, EBITDA, net income, and sales revenue.  This omission is particularly

21  troubling because the Put Option's requirement that valuators consider "multiples" of financial fundamentals

22  seems to call expressly for a traditional market-based approach.  Plaintiffs argue that "[i]n his valuation,

23  Badding considered, and utilized where appropriate, seven criteria prescribed in the Put Option."  Opp.

24  Mot. Excl. at 5:13-14.  Yet, although Badding recites the Put Option's criteria on page twelve of his expert

25  report, he never mentions them again.

26      Plaintiffs cite *Henry v. Champlain Enterprises, Inc.*, 288 F. Supp. 2d 202 (N.D.N.Y. 2003),

27  *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 487 (D. Del. 2005), *Rondout Valley Cent.*

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

1   *School Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469 (N.D.N.Y. 2004), and *Tyler v. Bethlehem Steel*

2   *Corp.*, 958 F.2d 1176 (2d Cir.1992) as supporting the proposition that defendant's criticisms of Badding's

3   opinion go to its weight, not to its admissibility.  The court disagrees.  For one, none of plaintiffs' authorities

4   involves the issue of whether the expert's testimony was relevant as well as reliable.  In addition, each of

5   plaintiffs' cases involves a situation where other indicia of reliability bolstered the expert's opinion.  *See*

6   *Henry*, 362 F. Supp. at 221 ("the use of [the expert's] methodologies" were "accepted"); *Tracinda*

7   *Corp.,* 362 F. Supp. at 494-95 (upholding admissibility of two experts' opinions where one expert used

8   "standard regression analysis that has been used by other academic studies" and had even been employed

9   by the opposing party's expert and the other expert's conclusions fell within the range of other analyses that

10  had been "prepared prior to litigation"); *Rondout*, 321 F. Supp. 2d at 478 (expert's report "bears a

11  remarkable resemblance to that of economists' reports and valuations, and, to be candid, there exists very

12  little deviation from those standard economic valuation processes"); *Tyler*, 958 F.2d at 1188 (expert based

13  critical assumption on "an official government document").  Plaintiffs cite no such external support for the

14  "direct ratio" method.

15          The court grants Canal+'s motion to exclude Badding's opinion of MNI's FMV.  It is not

16  sufficiently reliable to justify admission.

17          **C.      Badding's Milestones Opinion**

18          Canal+'s sole challenge to Badding's Milestones Opinion is that it is not relevant because MNI's

19  operating under budget could not have been a Financial Milestone.  Neither Badding nor Canal+'s experts

20  are competent to testify as to whether or not Financial Milestones were set, whether they should be implied,

21  or whether they should be considered to exist.  The experts may, however, assist the jury by explaining

22  what the financial records of MNI show, if that is relevant to an issue (e.g., if relevant, Badding could show

23  how net income or loss is shown by MNI's financial records).

24          The decision on whether to admit any testimony by Badding on what MNI's financial records show

25  is deferred pending a specific proffer.

26

27

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

1

### III.  ORDER

2      The court (1) grants Canal+'s motion to exclude Badding's testimony on the value of MNI's

3  common stock and (2) grants Canal+'s motion to exclude Badding's testimony as to what any MNI goals

4  or Financial Milestones were but defers ruling on whether Badding can testify as to what MNI's financial

5  statements show.

6

7

8  DATED:        6/17/05                              /s/ Ronald M. Whyte
                                                RONALD M. WHYTE
9                                               United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**
   E. Jeffrey Banchero                          ejb@kastnerbanchero.com

3

4  **Counsel for Defendant(s):**
   Christian Parker                             cparker@salans.com
5  William Abrams                               william.abrams@pillsburylaw.com
   Jonathan G. Kortmansky                       jkortmansky@sandw.com
6  Krishna K. Juvvadi                           kkjuvvadi@rkmc.com
   Vernon H. Granneman                          vernon.granneman@pillsburylaw.com

7
   Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
8  e-filing under the court's CM/ECF program.

9
   **Dated:**        6/17/05                              /s/ MAG
10                                                 **Chambers of Judge Whyte**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DEFERRING IN PART THE DECISION ON DEFENDANT'S MOTION TO EXCLUDE THE
EXPERT WITNESS TESTIMONY OF SEAN BADDING
C-02-05509-RMW